IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| CHRIS FERRARA, SR. and<br>ANGELA FERRARA, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 25-00133-KD-N |
| | ) | |
| OAK SHORES DEVELOPMENT, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This action is before the Court on the Motion for Partial Summary Judgment filed by Defendant Oak Shores Development LLC (doc. 32), Plaintiffs Chris Ferrara, Sr. and Angela Ferrara's Response and Supplements (docs. 46, 47, 50)[1] and Oak Shores' Replies (docs. 48, 51). Upon consideration, and for the reasons set forth herein, the Motion is GRANTED. Oak Shores' counterclaim for "Breach of Easement and Deed Covenants" (Count II) and "Trespass" (Count III) remain pending (doc. 3, p. 27-29).

---

[1] Invoking Fed. R. Civ. P. 56(d), the Ferraras argue that summary judgment should not be granted until they have had an opportunity to complete discovery and adequately respond to Oak Shores' motion (doc. 46, p. 2, 10-16; doc. 47, supplement). Upon consideration, and as discussed herein, the Rule 56(d) motion is denied. The Ferraras filed a supplemental brief wherein they report receipt of initial documents responsive to their discovery requests but argue that additional discovery is still necessary with respect to the approval process before the City of Orange Beach and the status of the easements (doc. 50). Oak Shores objects to the supplemental brief on grounds that: 1) the supplement was filed without leave of Court and violates the Court's prior briefing schedule orders, 2) the supplement "is irrelevant because it does not concern the creation and approval of the Subject Easements some ten years ago; it only attempts to address Oak Shores' recent subdivision of its property into residential lots" and 3) the argument raised in the supplement relies on emails and communications which "must be excluded because they are unauthenticated and constitute inadmissible hearsay." (doc. 51). Discovery was not stayed while the motion for partial summary judgment was pending.  Discovery closed January 21, 2026, thus, the parties had sufficient time for discovery (doc. 27, Rule 16(b) Scheduling Order).  Neither the Ferraras nor Oak Shores filed a summary judgment motion after the close of discovery.

I. Procedural Background

The Ferraras filed suit against Oak Shores in the Circuit Court of Baldwin County, Alabama (doc. 1-1).  The Ferraras request equitable relief in the form of a permanent injunction to enjoin Oak Shores from use of a disputed easement across the Ferraras' real property (Count One). The Ferraras also request declaratory judgment pursuant to Ala. Code § 6-6-223 to "address legal questions surrounding the validity and legal consequences of the Partition Agreement" and to "address issues of fact surrounding whether the Defendant complied with the City [of Orange Beach, Alabama's] Subdivision Regulations" (Count Two).

Oak Shores removed this action alleging diversity jurisdiction, answered the Complaint, and counterclaimed against the Ferraras (doc. 3).  In its counterclaim, Oak Shores requests a declaratory judgment under the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that it "has all rights set forth in the easements, including rights of ingress, egress, and utility rights over and across Ferrara Parcel 1 and Ferrara Parcel 2" (Count One). Oak Shores also alleges breach of easement and deed covenants (Count Two), and Trespass (Count Three). The Ferraras moved to remand on grounds that the amount in controversy was not met (doc. 6).  Their motion was denied (doc. 49).

II. Findings of Fact

In November 2013, H. Wade Faulkner, Jr., Elizabeth F. Taupeka, Jay B. Faulkner, and Daniel G. Blackburn entered into an unrecorded "Original Partition Agreement" for the division of real property located at the City of Orange Beach, Alabama (doc. 32-6).  After execution of that Agreement, the parties obtained approval of the Blackburn Family Division Plat #1 by the City and the Plat was recorded (Id.).

In 2015, the parties entered into a written Memorandum of Partition Agreement. The parties agreed that

> Dan, Wade, Beth and Jay wish to complete the division of the Property contemplated [in] the Original Partition Agreement, and to that effect are executing this Agreement which is a summary of the more comprehensive Original Partition Agreement, and which is executed in order to clarify and make of record certain easements, rights, benefits, and burdens affecting the Property as part of the partition.

(Doc. 32-6).

The property was partitioned among the four owners:  Lot 1- H. Wade Faulkner, Jr., Lot 2 – Elizabeth F. Taupeka, Lot 3 – Jay B. Faulkner, and Lot 4[2] – Daniel G. Blackburn (Id.) (doc. 32-7, Blackburn Family Division, Plat #1, 2015) (doc. 32-2, Blackburn Family Division Plat #1, Revised, 2021). Relevant here, the parties agreed in the Memorandum of Partition Agreement ("Partition Agreement") that "portions of each parcel to be subdivided" would be "subject to certain easements for ingress, egress and utilities" that were permanent and run with the land and that the "easements for ingress and egress and for utilities as described in Paragraphs 2.a, 2.c., … shall be permanent and shall run with the land" (doc. 32-6, at ¶ 2.f.).

In Paragraph 2.a., Wade agreed that Lot 1 "will be subject to an easement" in favor of Beth (Lot 2) and Jay (Lot 3) "for ingress, egress, and utilities such that Beth's Property and Jay's Property will be afforded adequate and convenient access to Canal Road, together with a suitable location for the placement of utilities." (Id.)   Beth agreed that Lot 2 "will be subject to an easement in favor of Jay for ingress, egress and utilities such that Jay's Property will be afforded

---

[2] For purpose of this Order, Lot 4 means Lot 4A and Lot 4B as depicted on the Blackburn Family Division Plat #1(2021) (doc. 32-2)

3

adequate and convenient access to the foregoing easement across Wade's Property, together with a suitable location for the placement of utilities" (Id.).  The parties also agreed:

> all easements described in this Paragraph for ingress and egress shall be of at least sufficient width and scope to permit Beth's Property and Jay's Property to be subdivided or otherwise developed in conformity with the Orange Beach Subdivision Regulations.

(Doc. 32-6, p. 3, ¶ 2.a.).

In Paragraph 2.c., Beth and Jay agreed that Lots 2 and 3 "shall be subject to an easement in favor of Dan [Lot 4] for ingress, egress and utilities such that [Lot 4] will be afforded adequate and convenient access and a suitable location for the placement of utilities" (Id.).  The parties also agreed:

> such easement for ingress, egress and utilities shall be of at least sufficient width and scope to allow Dan's Property to be subdivided or otherwise developed in conformity with the Orange Beach Subdivision Regulations. The easement for utilities across [Lot 2] and [Lot 3] shall lie within the easement across [Lot 2] and [Lot 3] for ingress and egress.

(Doc. 32-6, p. 4, ¶ 2.c.).

The concluding section of Paragraph 2 contains the following:

> Each party to this Agreement intends that all permanent easements described herein are of a sufficient width and scope to permit, and may be used in conjunction with, any single-family residential, multi-family residential, commercial, or planned unit development as may be permitted by the City of Orange Beach.  Based on such intention, Dan, Wade, Beth and Jay expressly waive, for themselves and their heirs and assigns, any claim that the various easements herein described may, in the future, be used by a greater number of persons than may have been anticipated by the parties on the date hereof; provided, however, that each party to this Agreement expressly reserves all rights, both legal and equitable, in the event any permanent easement described herein is deemed to be subjected to use by unauthorized persons or that any of such easements may be devoted to uses which are not permitted by the Orange Beach Zoning Ordinance or Subdivision Regulations.  This waiver shall survive the Closing of this transaction.

(Doc. 32-6, p. 6).

The Partition Agreement did not include an agreement that the easements for ingress, egress, and utilities which burden Lot 1 were also in favor of Lot 4.  These easements were established in Wade's Partition Deed for Lot 1. Specifically, in relevant part,

> Said conveyance [of Lot 1] is SUBJECT, HOWEVER, unto the following: …
>
> 3. An easement for ingress, egress and utilities for the benefit of Lots 2, 3 and 4 of said subdivision, their heirs and assigns, over and across the following portion of said Lot 1 . . .
>
> 4. A sixty (60) foot easement for utilities over and across a portion of Lot 1 . . . for the benefit of the owners of Lots 2, 3, and 4 of said subdivision, their heirs and assigns, . . .
>
> 5. A twenty (20) foot utility easement over and across Lots 1 and 2 . . . for the benefit of the owners of Lots 2, 3, and 4 of said subdivision, their heirs and assigns, . . .
>
> 8. An easement for ingress, egress and utilities for the benefit of the owners of Lots 2, 3 and 4 of said subdivision, over and across the following portion of said Lot 1 . . .

(Doc. 32-8, Partition Deed, Lot 1).

Additionally, easements for ingress, egress, and utilities over and across Lots 1, 2, and 3 were granted to Dan in his Partition Deed for Lot 4.  Specifically:

> Lot 4 of Blackburn Family Division, Plat No. 1 …
>
> TOGETHER WITH a sixty (60) foot easement for ingress and egress and utilities for the benefit of the owners of Lot 4 of said subdivision, their heirs and assigns over and across Lots 2 and 3 …
>
> TOGETHER WITH an easement for ingress, egress, and utilities for the benefit of the owners of Lots, 2, 3, and 4 of said subdivision, their heirs and assigns, over and across the following portion of said Lot 1 …

> TOGETHER WITH a sixty (60) foot easement for utilities over and across a portion of Lot 1 … for the benefit of the owners of Lot 4 of said subdivision, their heirs and assigns …
>
> TOGETHER WITH a twenty (20) foot utility easement over and across Lots 1 and 2 … for the benefit of the owners of Lot 4 of said subdivision, their heirs and assigns …

(Doc. 32-10, Partition Deed, Lot 4).

Easements for ingress, egress, and utilities which burden Lot 2 in favor of Lots 3 and 4 were established in the Partition Agreement as previously stated and in Beth's Partition Deed for Lot 2.  Specifically,

> Said conveyance is SUBJECT, HOWEVER, unto the following:  …
> 2. Terms, conditions, rights and obligations as set forth in that certain [Partition Agreement]…
>
> 3. That portion of the following described easement for ingress, egress, and utilities which lies across Lot 2: a sixty (60) foot easement for ingress, egress and utilities over and across Lots 2 and 3 . . .
>
> 4. A twenty (20) foot utility easement over and across Lot 2 for the benefit of the owners of Lots 3 and 4 of said subdivision, their heirs and assigns, . . .

(Doc. 32-9, Partition Deed, Lot 2).

All the Partition Deeds were subject to the terms, conditions, rights and obligations as set forth in the unrecorded Partition Agreement and the recorded Memorandum of Partition Agreement.

The Ferraras purchased Lot 1 from Wade in August 2021. In relevant part, the Warranty Deed states that Lot 1 is subject to the terms, conditions, rights and obligations of the unrecorded Partition Agreement; the Memorandum of Partition Agreement; "Restrictions, covenants, conditions, reservations, easements" recorded in the Partition Deed for Lot 1; and "Restrictions,

6

declarations, reservations, setbacks, and easements, if any, as indicated and/or shown on that certain Plat recorded on Slide 2528-D and at Instrument 1499616" the initial Blackburn Family Division recorded in 2015 (docs. 32-4).

The Ferraras purchased Lot 2 from Beth in June 2023. In relevant part, the Warranty Deed states that Lot 2 is subject to the terms, conditions, rights and obligations of the unrecorded Partition Agreement; the Memorandum of Partition Agreement; "Restrictions, covenants, conditions, reservations, easements" recorded in the Partition Deed for Lot 1; and "Restrictions, declarations, reservations, setbacks, and easements, if any, as indicated and/or shown on that certain Plat recorded on Slide 2528-D and at Instrument 1499616, and revised on Slide 2785-D and at Instrument 1923779" (docs. 32-5).

Oak Shores purchased Lot 4 from Dan in January 2025 (doc. 32-3). In relevant part, the Warranty Deed conveys Lot 4 "together with those certain appurtenant easements, rights and privileges, and the terms and conditions thereof, contained in Instrument No. 1539356 [the Partition Agreement] and in Instrument No. 1539363 [the Partition Deed to Dan], and as revised on the Blackburn Family Division Plat No. 1 (revised)" (Id., p. 1) (bracketed text added).

Oak Shores received approval from the City to subdivide Lot 4 into 76 single family residential lots. Several of the residences will front Bay La Launch (doc. 32-1, James Nicholson Affidavit).[3] Because wetlands and a pond cross Lot 4 and extend into part of Lot 3, access to the waterfront portion of Lot 4 was through easements over Lots 1, 2, and 3.  The easements over and across Lot 3 are not at issue in this action.

After the City's decision, the Ferraras constructed a permanent wooden fence with a chain and sign which blocks Oak Shores' access to the easements and identified the easements as

---

[3] The Ferraras allege that 12 waterfront lots are planned (doc. 1-1¶ 19).

private property (doc. 32-1, ¶ 20).  Thus, Oak Shores asserts that it cannot develop the waterfront lots in Lot 4 and is "only able to develop the infrastructure on the inland portions" (Id., ¶ 23).

III. Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome" of the case. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). If "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," a genuine dispute of material fact exists. Id.

The party moving for summary judgment "bears the initial burden of demonstrating the absence of a genuine dispute of material fact." FindWhat Inv'r Grp. v. FindWhat.com, 658 F.3d 1282, 1307 (11th Cir. 2011). The movant meets this burden by identifying affirmative evidence (pleadings, depositions, answers to interrogatories, admissions on file, etc.) to support its claim that no genuine dispute of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A). If the nonmovant bears the burden of persuasion at trial, the movant may also make a prima facie showing of summary judgment by demonstrating that the nonmovant's evidence is insufficient to establish an essential element of its claim. Grange Mut. Cas. Co. v. Slaughter, 958 F.3d 1050, 1057 (11th Cir. 2020); Fed. R. Civ. P. 56(c)(1)(B).

If the movant meets its burden under Rule 56(c), summary judgment will be granted unless the nonmovant offers some competent evidence that could be presented at trial showing that there is a genuine dispute of material fact. Celotex, 477 U.S. at 324. If the movant met its burden by pointing "to specific portions of the record . . . to demonstrate that the nonmoving party cannot meet its burden of proof at trial," the nonmovant must "go beyond the pleadings" to designate specific facts showing a genuine issue for trial. Id.; Fed. R. Civ. P. 56(e).

When assessing a summary judgment motion, the court's function is not to make "credibility determinations" and "weigh the evidence." Anderson, 477 U.S. at 248. Instead, the court must "view all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." FindWhat, 658 F.3d at 1307. Thus, summary judgment is only proper when a movant shows that no reasonable jury could find for the nonmovant—even when the evidence and inferences are drawn in the nonmovant's favor.

IV. Applicable Law

Title 28 U.S.C. § 2201, provides that in a "case of actual controversy within its jurisdiction" (diversity), the Court "may declare the rights and other legal relations of any interested party seeking such declaration[.]".  Also, Federal courts in diversity actions apply state substantive law. Erie R.R. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941).  Additionally, the Partition Agreement at issue contains the following choice of law provision:

> 8. Governing Law – This agreement shall be deemed to have been entered into in the state of Alabama and shall be governed by and construed in accordance with the laws of the State of Alabama, without giving effect to any choice of law provision arising thereunder.

(Doc. 32-6, p. 8).

Under Alabama law, the parties may seek a judicial declaration of rights. Specifically, Ala. Code § 6–6–223, captioned, "Construction or validity of instruments, statutes, ordinances, contracts, or franchises", sets forth as follows:

> Any person interested under a deed, will, written contract, or other writings constituting a contract or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

9

Ala. Code § 6–6–223.

VI. <u>Analysis</u>

A. <u>Declaratory judgment as to the City of Orange Beach, Alabama's subdivision approval</u>

In their Complaint, the Ferraras allege that Oak Shores "did not comply with the City's Subdivision Regulations procedure", specifically Article 3.3 - "Dividing One Lot into Multiple Lots", when "seeking the 76 subdivisions of Lot 4-A and Lot 4-B, but the City approved [Oak Shores] application anyway." (doc. 1-1, ¶¶ 12, 21). They claim that Oak Shores represented to the City that the application for its Major Preliminary Subdivision complied with procedures in the City's Subdivision Regulations, but in fact Oak Shores had not complied. (Id., ¶¶ 41-42). The Ferraras seek a declaratory judgment "to address issues of fact surrounding" whether Oak Shores complied with the Subdivision Regulations (Id., ¶ 40) and a declaration that Oak Shores "failed to comply with the procedure set forth in Article 3.3 of the City's Subdivision Regulations." (doc. 1-1, Count Two, p. 9).

Oak Shores argues that the Ferraras cannot challenge the City's approval of Oak Shores' application for subdivision of Lot 4 into single-family residential lots or seek to invalidate the recorded easements, through a declaratory judgment action. Oak Shores argues that under Alabama law "a declaratory judgment is not an alternative to the statutory and administrative appeal processes" and that the "Ferraras' sole mechanism of disputing the City's decision, if any, was provided by the statutory appeal process" in Ala. Code § 11-52-80-81. Oak Shores also argues that the relevant case law and statutes establish "that private individuals cannot force a municipality to enforce its zoning regulations" and that the Ferraras have no private right of action against Oak Shores based on the City's zoning decisions (doc. 32, p. 12-17).

10

The Ferreras argue that they are not challenging the City's approval but rather Oak Shores' failure to comply with Article 3.3 of the City's Subdivision Regulations. They "ask the Court to determine *private* real property rights – specifically whether, Oak Shores may lawfully burden Lots 1 and 2 with access and utility easements that, in the Ferraras' view, were never created, have lapsed, or were obtained only after material misrepresentation to the City". (doc. 46, p. 2) (italics in original).  The Ferraras argue that they seek "a declaration that Oak Shores' subdivision application failed to comply with Article 3.3 of the City's Subdivision Regulations, thereby precluding Oak Shores from relying on the alleged easements to serve seventy-six (76) residential lots on Bay La Launch" (Id., p. 3).  The Ferraras argue that they had no appeals process; however, Ala. Code § 35-2-58 "authorizes any aggrieved party to *annul* or *invalidate* a recorded plat in the circuit court." (Id., p. 4) (italics in original).  As grounds to annul or invalidate the approval of Oak Shores' subdivision, the Ferraras argue that a planning commission's approval is bound by limits on its authority in its regulations and that the limitation found in Article 3.3 binds the City's Planning Commission.[4] Specifically, "Article 3.3 requires a subdivider to demonstrate 'means of common ownership and maintenance' of improvements located on *other owners'* land" and that Oak Shores misrepresented to the Planning Commission "that it held 'full single-interest control' over Lots 1 and 2" (Id., p. 5).  Here, the Ferraras argue that they will prove that "Lot 4's owner never acquired the easement rights that Oak Shores now claims." (Id.).

---

[4] In their Complaint, the Ferraras state that "upon information and belief, [Oak Shores] represented to the City that it has full single interest control in all of the properties impacted by [Oak Shores] subdivision when it does not" and that "no easements [were] granted in the Partition Agreement that burden Lot 1" (doc. 1-1, p. 6).

Despite how the Ferraras phrase their claim, what they seek is for this Court to reverse the approval of the subdivision plan by the City of Orange Beach.  In support, the Ferraras cite 790 Montclair, LLC v. Birmingham Metro, LLC, et. al., --- So. 2d ---, 2025 WL 1831112 (Ala. July 3, 2025).  In 790 Montclair, the Alabama Supreme Court addressed an adjoining landowners claim, pursuant to Ala. Code § 35-2-58, that a subdivision plan, approved by the City of Birmingham, should be invalidated.  In 790 Montclair, the adjoining landowner argued that Birmingham Metro, the proponent of the subdivision plan, failed to comply with the notice requirements of the City's regulations.  The Court emphasized that a municipal planning commission's authority to approve a subdivision is limited by legislation as well as its own regulations.  2025 WL 1831112, at *2.  In other words, an adjoining landowner may attempt to invalidate an approved subdivision plan if the City or applicant fail to abide by the City's regulations.

As explained in 790 Montclair, such an action may be brought pursuant to Ala. Code § 35-2-58.  This section requires that the plaintiff join the City in any attempt to invalidate the subdivision plan; "the municipality, town, or city, if the land is located within any municipality, town, or city, shall also be made a party defendant...." Id.   The Ferraras have failed to do so.

Moreover, the Ferraras insistence that this is not a claim against the City is further eroded by their argument.  The Ferraras argue that Article 3.3 required Oak Shores to "demonstrate 'means of common ownership and maintenance' of improvements located on *other owners'* land" (italics in original).  The Ferraras argue that Oak Shores misrepresented to the Planning Commission that it had "'full single-interest control' over Lots 1 and 2" when it did not, because the Partition Agreement did not include an easement for utilities, ingress and egress across Lot 1 for the benefit of Lot 4 (doc. 1-1, p. 6)

In their Complaint, the Ferraras cite specifically to Orange Beach Subdivision Regulation 3.3.6, in the section captioned "Dividing One Lot into Multiple Lots" (doc. 1-1, p. 5), as the Regulation that Oak Shores failed to meet. Provision (n) of the cited regulation requires that Oak Shores provide "all documents and other assurance ... <u>satisfactory to the city attorney</u>, to establish a means of common ownership and management of all common areas." (emphasis added). Therefore, in reality, the complaint is that the city attorney *should not have* found the documents to sufficiently meet the requirements. To challenge this determination, made by the City based on the documents presented by Oak Shores, the Ferraras will have to seek relief against the City of Orange Beach, not Oak Shores. In other words, the Ferraras have failed to state a cause of action against Oak Shores under Ala. Code § 35-2-58.

Moreover, in their request pursuant to Fed. R. Civ. P. 56(d), the Ferraras fail to explain how discovery will assist in supporting this claim. Hence, the Ferraras' Fed. R. Civ. P. 56(d) request as to this issue is DENIED. Accordingly, Oak Shores' motion for summary judgment seeking denial of the Ferraras' request for a declaratory judgment declaring that Oak Shores failed to comply with the procedures in Article 3.3 of the City's Subdivision Regulations[5] is GRANTED.

B. <u>Declaratory judgment as to the validity of the easements across Lot 1 and Lot 2</u>

Oak Shores moves for summary judgment as to the validity of the easements for ingress, egress and utilities across Lot 1 and Lot 2. Oak Shores acknowledges that the easements burdening Lot 1 in favor of Lot 4 were not created by the Partition Agreement, but instead by the Partition Deeds for Lot 1 and Lot 4 (doc. 32, p. 5). Oak Shores argues that under Alabama law writings executed and recorded contemporaneously and in the course of the same transaction, as

---

[5] Complaint, Count Two, Declaratory Judgment, ¶¶ 40, 41, 42; and 7 (request for relief).

were the Partition Agreement and Partition Deeds, are construed together to ascertain the intent of the parties and to give effect to all provisions of the documents (Id., p. 18-20). And that when the Partition Agreement is construed with the Partition Deeds, the easements in the Partition Deeds for Lots 1 and Lot 2 are clearly in favor of Lot 4 and are valid and enforceable easements (Id., p. 18, 20)

Oak Shores argues that it is entitled to judgment on its counterclaim for declaratory relief in the form of enforcement of the recorded easements in the Partition Agreement and the Partition Deeds according to their terms (Id. p. 21). Oak Shores also requests summary judgment denying all of the Ferraras' requested declaratory relief and entry of a "declaratory judgment determining that Oak Shores' rights, as owner of Lot 4, in all the easements set forth in the Partition Agreement and Partition Deed, are valid and enforceable, including the right of ingress, egress, and utility rights over and across Lot and Lot 2." (Id., p. 21).

In response, applying the same legal theory as Oak Shores - that documents executed contemporaneously form a single integrated agreement - the Ferraras argue that the Partition Agreement controls,[6] not the Partition Deed, and it does not convey an easement burdening Lot 1 for Lot 4 (doc. 48, p. 7-9).  The Ferraras point out that the Lot 1 Partition Deed is expressly "subject" to the unrecorded and recorded Partition Agreements, the latter of which does not contain this easement.  The Ferraras argue that where a conflict exists, the more specific instrument prevails, and here that is the Partition Agreement which reflects a "carefully negotiated easement scheme" (Id, p. 8). The Ferraras argue that the "interplay between the deed recital" and the Partition Agreement "renders the scope and even the existence of any Lot 1

---

[6]  Inexplicably, in their Complaint, the Ferraras seek a declaratory judgment "that the Partition Agreement is void and unenforceable" (doc. 1-1, p. 8).

easement in favor of Lot 4 ambiguous" and thus a question for trial. (Id., p. 9).  In sum, the Ferraras contend that the Partition Agreement which fails to mention an easement across Lot 1 in favor of Lot 4, and to which they were not a party, should control whether Oak Shores has an easement across Lot 1.[7]

As explained by Oak Shores in its reply (Doc. 48, Sec. I, pp 3-8), and adopted as the reasoning of the Court, when the Ferraras acquired their property, the vesting deeds clearly indicated easements across Lots 1 and 2 in favor of Lots 3 and 4 (docs. 32-8, 32-9). Although the Partition Deeds were subject to the Partition Agreement,[8] which may not have specifically identified easements across Lot 1 for the benefit of Lot 4, the Partition Deeds unambiguously described and conveyed the easements making Lot 1 "subject" to the easements and conveying them "together with" Lot 4 to the original Partition Deed grantee, Dan Blackburn.  Nothing in the Partition Agreement prevented this. There is no genuine issue of fact as to this conclusion, the Partition Deeds are not ambiguous, thus it is strictly an issue of contract interpretation. Henson v. Thomas, 337 So. 3d 289, 295 (Ala. Civ. App. 2020) ("When the easement is one of express grant ... this Court must determine the scope of the easement according to the written language of the deed. …  If this language is unambiguous, the Court may not consider parol evidence to determine to what extent the grantor intended to grant the easement.") (citations omitted); Moss v. Williams, 822 So. 2d 392, 397 (Ala. 2001) ("A fundamental rule of

---

[7] The Ferraras do not dispute that Lot 2 is burdened in favor of Lot 4 (doc. 46, p. 8).

[8] "9. Survival – All provisions of this Agreement shall survive the closing contemplated hereby, and the mutual promises exchanged here shall be binding upon Dan, Wade, Beth and Jay, and their respective heirs, successors and assigns." (doc. 32-6).  Thus, the parties were bound to convey the easements identified in the Agreement.

construction is that, in construing the terms of a deed, a court is to ascertain the intention of the parties, 'to be collected from the entire instrument.'") (citations omitted).

After the initial Partition Deed, Dan Blackburn sold Lot 4 to Oak Shores. The Warranty Deed also conveyed the easements on Lot 1 for benefit of Lot 4[9] and specifically identified Lot 4 by way of the recorded Blackburn Family Division Plats No. 1 and No. 2 (doc. 32-3).

Moreover, when the Ferraras purchased Lot 1, their Warranty Deed clearly indicated that Lot 1 was burdened with easements in favor of Lot 4 (doc. 32-4). The Warranty Deed recited that Lot 1 was "SUBJECT, HOWEVER, to the following" (Id., emphasis in original):

> 1. Terms, conditions, rights and obligations as set forth in that certain unrecorded Partition Agreement by and among Daniel G. Blackburn, H. Wade Faulkner, Jr., Elizabeth F. Taupeka and Jay B. Faulkner dated November 22, 2014.

> 2. Terms, conditions, rights and obligations as set forth in that certain unrecorded Partition Agreement by and among Daniel G. Blackburn, H. Wade Faulkner, Jr., Elizabeth F. Taupeka and Jay B. Faulkner dated October 15, 2015 and recorded at Instrument 1539356.

> 3. Restrictions, covenants, conditions, reservations, easements recorded at Instrument 15539360.[10] . . .

> 6. Restrictions, dedications, reservations, setbacks and easements, if any, as indicated and/or shown on that certain Plat recorded on Slide 2528-D and at Instrument 1499616.[11]

---

[9] Lot 4 was conveyed "together with those certain appurtenant easements, rights and privileges, and the terms and conditions thereof contained in" the Partition Agreement and the original Partition Deed (doc. 32-3, p. 1).

[10] Instrument 15539360 is the original Partition Deed to Wade Faulkner which states that Lot 1 is "SUBJECT, HOWEVER, unto the following:" (emphasis in original) and describes the relevant easements for benefit of the owners of Lots 2, 3, and 4 (doc. 32-8, ¶¶ 3, 4, 5, 8).

[11] The Plat shows easements across Lot 1 (doc. 32-7).

Hence, as to this issue, the Ferraras' Fed. R. Civ. P. 56(d) request is DENIED.  Oak Shores motion for summary judgment for a declaratory judgment that the easements over and across Lots 1 and 2 exist in favor of Lots 3 and 4 is GRANTED.

C. Whether Oak Shores proposed use of the easements exceeds the intended scope of the easements granted.

In their response, the Ferraras argue that there is an issue of fact as to whether Oak Shores' proposed intensity of use of the easements "materially exceeds the scope" of the easements as contemplated when the owners entered into the Partition Agreement, and whether the original grant of the easements lacks the necessary certainty under Alabama law to burden Lot 1 in perpetuity.[12]  This argument was raised for the first time in response to Oak Shores' motion for summary judgment. [13]  There are no allegations in the Ferraras' Complaint that Oak Shores intended intensity of use of the easements exceeds the scope[14] or allegations that the

---

[12] The Ferraras did not include Lot 2 in this argument, thus they appear to concede that the easements over and across Lot 2 are sufficiently definite and certain.

[13] The Ferraras submitted a supplemental brief outlining the significant amount of discovery obtained in regard to the issue of whether the City has finally approved Oak Shores' subdivision plan – "only preliminary, conditional City approval exists, numerous unfulfilled conditions remain at federal, state and local levels; and required ADEM and U.S. Army Corps permits are absent and still under active agency review" (doc. 50, p. 2) And that "the scope, location, and enforceability of the easements on which Oak Shores relies are materially disputed in the public record itself – across recorded and unrecorded partition instruments, title commitments and requirements, scrivener's affidavits, and communications from the City of Orange Beach and among the original partitioning co-owners and the title company—such that the parties' intent and the legal effect of those instruments must be resolved with extrinsic evidence by the trier of fact." (Id.).

[14] It appears that claims regarding intensity of use may have been waived in the Partition Agreement:

> Each party to this Agreement intends that all permanent easements described herein are of a sufficient width and scope to permit, and may be used in conjunction with, any single-family residential, multi-family residential,

17

description of the easements lacks sufficient specificity.  And while the Ferraras claim that Oak

Shores did not comply with the procedures for obtaining subdivision approval, there are no

allegations that the easements do not comply with subdivision regulations.  The Ferraras cannot

amend their complaint by way of their response to a motion for summary judgment.  Felix v. Key

Largo Mgmt. Corp., No. 21-10381, 2021 WL 5037570, at *4 (11th Cir. Oct. 29, 2021)

("Plaintiffs cannot raise new claims in summary judgment filings.") (Citing Flintlock Constr.

Servs., LLC v. Well-Come Holdings, LLC, 710 F.3d 1221, 1227–28 (11th Cir. 2013)).

VII. Conclusion

Upon consideration, and for the reasons set forth herein, Oak Shores' Motion for Partial

Summary Judgment is GRANTED. Oak Shores' counterclaim for "Breach of Easement and

Deed Covenants" (Count II) and "Trespass" (Count III) remain pending (doc. 3, p. 27-29).

DONE and ORDERED this 20th day of March 2026.


s/ Kristi K. DuBose
KRISTI K. DUBOSE
UNITED STATES DISTRICT JUDGE

---

commercial, or planned unit development as may be permitted by the City of
Orange Beach. Based on such intention, Dan, Wade, Beth and Jay expressly
waive, for themselves and their heirs and assigns, any claim that the various
easements herein described may, in the future, be used by a greater number of
persons than may have been anticipated by the parties on the date hereof; (doc.
32-6, p. 6).